(137 So. 429)

**DUDLEY et al. v. COLONIAL LUMBER CO.**

5 Div. 81.

Supreme Court of Alabama.

Nov. 5, 1931.

Powell & Powell, of Tuskegee, for appellee.

Wm. Russell and C. A. deBardeleben, both of Tuskegee, for appellants.

## BROWN, J.

It is well settled that a mortgagor in possession, before foreclosure under the power may without tender, upon offer in his bill to do equity, maintain a bill to protect and enforce his equity of redemption, and a foreclosure pendente lite does not affect his right to relief, and in a proper case may have an accounting. The allegations of the bill were sufficient to bring the case within these principles. Williams v. Noland, 205 Ala. 63, 87 So. 818; Ezzell v. First National Bank of Russellville, 218 Ala. 462, 119 So. 2; Boyd et al. v. Dent, 216 Ala. 171, 113 So. 11, 15; Blue v. First National Bank of Elba, 200 Ala. 129, 75 So. 577; Sewell v. Nolen Bank et al., 204 Ala. 93, 85 So. 375.

The controversies, the basis of this litigation, arise out of the relation of principal and agent, involving numerous and sundry transactions extending over a period of two or more years, about which much testimony was given, resulting in a voluminous record which has been painstakingly examined, and we are content to state the principles of law applicable and our conclusion on the facts.

The complainants, at the time the relation between the parties began and throughout its existence, were engaged in the business of operating a sawmill, equipped for manufacturing, drying, and finishing lumber, at Tuskegee, Ala., and the defendant was engaged in the wholesale lumber business, buying from different and sundry mills in the Southern territory and selling at wholesale.

On May 5, 1928, to state its general effect, the parties entered into a contract, covering the period from said date to May 1, 1929, in which the complainants conferred upon the defendant, as their agent, the right to sell all lumber "controlled and owned," the output of complainants' mill; and the defendant engaged to sell at the reasonable market price, to make report of such sales, and pay or credit to complainants' account, the amounts received less commissions paid salesmen, freight to destination, the usual trade discount of 2 per cent. from the amount after deducting freight and "$1.50 per thousand feet for orders specifying a grade of #2 common or lower grades, and $3.00 per. thousand on orders specifying a higher grade than #2 common," the specified commissions to be received by the defendant "as compensation for the sale of said lumber *and for accommodation in the form of credit extended* to" complainants. The complainants guaranteed "grade, count and workmanship." (Italics supplied.)

In connection with this contract, the defendant advanced to complainants $2,500, secured by note and mortgage and drawing 8 per cent. interest, payable six months from date, and defendant agreed to advance the additional sum of $1,500 to be secured by second mortgage.

The business of manufacturing, selling, and shipping lumber proceeded under this contract until December 5, 1929, when there was a casting up of accounts between the parties, resulting in a balance of $24,000, due the defendant, for which the complainants executed their notes as follows: Two notes dated October 25, 1929, one for $2,000 and the other for $3,000, falling due January 25, 1930; and four notes dated December 5, 1929, one for $5,000, due three months after date, one for $5,000 due six months after date, one for $5,000 due nine months after date, and one for $4,000 due twelve months after date, all drawing interest from maturity; interest on account, constituting the indebtedness represented by said notes, being included in the face of the notes to date of their execution.

The mortgage recites, inter alia: "The parties hereto on May 5th, 1928, executed a contract whereby certain monies were advanced and certain arrangements entered into between them. Operating under said contract and expending and enlarging the limits of credit specified therein and the volume of business contemplated therein the account between the parties has reached the proportions set forth above. The said contract still continued in force between said parties and shall continue until all indebtedness as herein specified and secured has been fully paid. Upon the payment in full of all outstanding indebtedness by the mortgagors, then the contract between the parties hereto may be terminated at the option of either."

The parties operating under said contract, the complainants manufactured during the period of operation something over 10,000,000 feet of lumber, on which commissions were allowed, the major part of which, consisting of 325 cars, was handled by the defendant.

The appellants' first contention is that the contract is rendered usurious by the provision that the commissions received by defendant were received "for the sale of said lumber and for said accommodations in the form of credit extended"—money advanced on which interest was charged at the rate of 8 per cent. In support of this contention, proof was offered showing that the usual and customary commission charged by wholesalers was 5 per cent. of the price received.

"The law seems to be well settled that where a contract for a loan provides for the rendition of services by the lender to the borrower, a fair charge for the services, in addition to the legal rate of interest on the money loaned does not render the contract usurious" (27 R. C. L. 231, § 32), if there is reasonable expectation that the services provided for can and will be performed. Harmon v. Lehman, Durr & Co., 85 Ala. 379, 5 So. 197, 2 L. R. A. 589; Smith v. Lehman, Durr & Co.,

85 Ala. 394, 5 So. 204; Houghton v. Burden, 228 U. S. 161, 33 S. Ct. 491, 57 L. Ed. 780.

While the commissions provided for in the contract and deducted from the proceeds of the lumber sold were greatly in excess of the usual and customary charge made by wholesalers, where there is no obligation on the part of the wholesaler to advance money to the millowner, we are not of opinion that it has been shown that the commissions provided for were for the use of the money advanced and intended as an evasion of the statute against usury, but were provided and taken for services rendered in selling, and for the obligation of the defendant to hold itself ready and able to advance complainants money when needed. Brown v. Harrison & Robinson, 17 Ala. 774; Swilley & Riley v. Lyon & Baker, 18 Ala. 552; Woolsey & Sons v. Jones & Bro., 84 Ala. 88, 4 So. 190.

The appellants' next contention is that the defendant, without complainants' consent, violated the contract creating the agency, and was guilty of bad faith and gross disloyalty in using the agency for its own gain without regard to the interest of complainants.

It is unquestionably the law that it is the duty of an agent to act in matters touching the agency, with due regard to the interest of the principal. In accepting the agency he impliedly undertakes to give his principal his best care and judgment, and to use the powers conferred upon him for the sole benefit of his principal consistent with the purposes of the agency. Seeberg v. Norville et al., 204 Ala. 20, 85 So. 505; Bowdon Lime Works et al. v. Moss, 14 Ala. App. 433, 70 So. 292.

And "an agent who, for a reward, is employed in the transaction of business, will justly forfeit all right to compensation, if he is guilty of bad faith to the principal." McGar v. Adams, 65 Ala. 106; Clay v. Cummins, 201 Ala. 34, 77 So. 328.

The evidence relevant to this question shows that all the lumber handled by defendant was shipped on its orders, specifying No. 2 common pine boards, No. 2 common and better, and better grades; that it was billed to defendant in accordance with said orders, and without complainants' knowledge the lumber was reinvoiced to the customer, the footage increased, and all of the orders for No. 2 common and No. 2 common and better sold as roofers or "Georgia roofers"; that defendant accounted to complainants on the basis of the original order, after deducting freight, the 2 per cent. discount and the commissions, the defendant retaining not only the specified commissions, but the "overage." A like course was pursued as to deduction and "overage" in respect to the other grades. This overage so retained during the course of the dealings amounted to several thousand dollars.

Much of the lumber was sold by defendant to wholesalers, contrary to the usual customs prevailing in the lumber trade, and a considerable amount was shipped and sold in transit—that is, shipped by the defendant without an order therefor, compelling a forced sale and resulting in some instances in charges of demurrage which were deducted from the proceeds. In case of shortage in the footage, the shortage was charged back to the complainants.

The only point here in which the evidence is in conflict arises from the contention that lumber cut at a mill, such as the complainants operated, classed as No. 2 pine boards and No. 2 common and better is known and classed by the trade the same as "Georgia roofers." The great weight of the evidence does not sustain this contention. It shows that "roofers" are of a lower grade, and vary in price from one to ten dollars per thousand less than No. 2 and No. 2 and better, and furthermore that complainants' lumber was well manufactured and justified the classification as of the better grades.

In justification of its course in raising the invoices as to footage and taking the "overage" for its own use, defendant asserts that it discovered that complainants were careless in filling orders and constantly loaded and shipped more lumber than ordered, and as the purchaser had the right of inspection and count in all cases, it was a matter between the purchaser and the defendant in which the complainants were in no way interested.

This contention cannot be sustained on principles heretofore stated, when and if defendant discovered that complainants were continuously shipping more than the orders called for, it was defendant's duty to so advise them, and, if it raised the invoices to cover the excess lumber and collected the price thereof, it was under duty to account therefor.

Another pertinent fact appearing from the evidence is that complainants had no knowledge of who the purchasers of lumber were, and, in order to keep this fact concealed, when claims for shortage were made and it was necessary to submit a report thereon with the invoice to the customer, the name of the purchaser was deleted from the order.

It further appears that complainants' business methods were lax and for much of the period they kept no books in respect to the lumber handled by defendant, but depended upon the defendant to keep a record of the transaction; the only record kept by the complainants being the original orders received, which were kept on file.

This condition prevailed up to the time the mortgage for $24,000 was given. Shortly before its execution, the complainants employed a bookkeeper, who called on defendant for its record of sales, for the purpose of

ascertaining the status of the accounts, and, in furnishing the date on which the casting up of the accounts was made, the entries showing raises of invoices and the collection of overage were withheld, and, without taking these into account the supposed balance was ascertained which was carried into the mortgage with interest calculated thereon.

■ The appellee contends, however, that complainants have also violated the contract in making local retail sales of lumber, only part of which was reported and commissions to defendant accounted for, and in making sales through others, especially the Lester Lumber Company of Montgomery, Ala.

In respect to local sales to the retail trade, the evidence of Dudley, the manager of complainants' mill, who testified that he advised defendant's president, Griffin, of these local sales, that a record was kept of such sales available to defendant if he desired to charge commissions thereon, and that Griffin sanctioned this course of procedure and advised him that no commissions would be exacted, stands undisputed.

In respect to sales made, some of the lumber belonged to the complainants and some was lumber dressed for others, in which complainants had no title or interest. Lumber not *"owned and controlled"* by complainants was not within the contract, and for all that appears sales made of lumber "owned and controlled" by the complainants through the Lester Lumber Company were reported and commissions charged thereon. We are not therefore of opinion that the contention of appellee has been sustained by the proof.

■ On the whole, we have reached the conclusion, that defendant in its dealings and course of conduct was guilty of bad faith and disloyalty to its principal, the complainants, and that it must be adjudged that it has forfeited its right to all commissions under the contract. McGar v. Adams, 65 Ala. 106.

The trial court dissolved the temporary injunction, and directed the defendant to proceed with the foreclosure of the mortgage under the power of sale, and, without reference in the matter of stating an account between the parties, ascertained the amount due on the mortgage much less than claimed. At the time the bill was filed the defendant was claiming $24,000, and in its answer asserted its claim to be $23,505.99, which was reduced by the decree to $12,800, which *"amount included all charges, expenses, and attorneys' fees chargeable under said mortgage."* (Italics supplied.)

It is enough to observe here that "charges, expenses, and attorneys' fees chargeable under the mortgage" were neither claimed nor proven. May v. Robinson, 221 Ala. 570, 130 So. 81.

If the indebtedness did not exceed $12,800, as ascertained by the decree, it is self-evident the defendant was proceeding prematurely to foreclose under the power of sale; this for the reason that the first three notes secured by the mortgage had been paid, and the fourth note did not mature until June 5, 1930. The defendant advertised the property on May 20, 1930, for sale June 16, 1930.

■ While it is well settled that the court was invested with a discretion to state the account between the parties, without a decree of reference, the better practice, where the accounts involve numerous items and the evidence is not entirely without dispute, is to order a reference before the register sitting as master. 1 C. J. 644, § 131; Chambers, Administrator v. Wright, 52 Ala. 444; Thomas, Supt. of Banks et al. v. Barnes et al., 219 Ala. 652, 123 So. 18; Thornton's Administrator et al. v. Neal, 49 Ala. 590.

■ The foregoing is sufficient to indicate that we are of opinion that complainants were entitled to an accounting; that the decree of the circuit court was erroneous, in dissolving the injunction, in charging complainants with "charges, expenses, and attorneys' fees," and in allowing the defendant to proceed with the foreclosure under the power of sale.

The decree will therefore be reversed and one here rendered granting the complainants relief. The matter of taking and stating the accounts between the parties is referred to the register of the circuit court of Macon county, who will, after giving notice as prescribed by law (Code 1923, § 6595), proceed to state the accounts charging the complainants with all moneys advanced by the defendant and interest thereon at the legal rate, and, proceeding on the partial payment plan, crediting the complainants with all payments made. In stating this account the casting up of the accounts between the parties resulting in the execution of the mortgage will be disregarded, except that the amounts due on the mortgage taken up and canceled at the time of execution of the mortgage of December 5, 1929, with the interest thereon are to be charged against complainants.

In stating the account against the defendant, the register will charge it with all money received for lumber sold by it, and money due on account from its customers for lumber sold, including what is termed in the evidence as "overage," and with all moneys paid to it by the complainants or others for the complainants on lumber sold by the complainants and through others than the defendant; and on all sums received by defendant as commissions for lumber sold directly by complainants, and their agents other than defendant. On sums withheld and not paid over to or credited to complainants' account,

interest will be charged at the rate of 8 per cent.

The register will credit said account with freight paid; with commissions paid to third parties for selling; with all sums paid directly, if any, to complainants from the proceeds of lumber sold, not including amounts entered as credit on complainants' account for money advanced.

If it be shown by satisfactory evidence that pending the appeal defendant has under the guise of foreclosure taken, consumed, used, or destroyed, any of complainants' lumber, timber, or machinery, the register is authorized to charge the defendant with the reasonable market price of such property as has been taken, consumed, or sold at the place of such taking, and reasonable rental for the use of property not taken. The register will ascertain the difference between the two accounts and report his findings to the court.

In proceeding to state the account, the register may consider all testimony on file in the cause, together with such other legal evidence as the parties may offer.

The register, after executing the reference, will make and file his report, giving the parties notice thereof, and hold the same ten days for exceptions, when he will deliver the same to the court, together with such exceptions as may be filed, for consideration.

All other questions are reversed for consideration and decision by the circuit court upon the coming in of said report.

Reversed, rendered and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.