19 So.2d 538

## LAUDERDALE et al. v. PEACE BAPTIST CHURCH OF BIRMINGHAM.

### 6 Div. 135.

Supreme Court of Alabama.

Oct. 5, 1944.

Rehearing Denied Nov. 16, 1944.

See, also, ante, p. 105, 19 So.2d 542.

D. G. Ewing, of Birmingham, for appellants.

180

Wm. E. James and James and James, all of Birmingham, for appellee.

SIMPSON, Justice.

Bill by appellants—heirs and the personal representative of W. L. Lauderdale, deceased—against appellee, The Peace Baptist Church, a corporation, to establish a resulting trust in real property.

The legal title to the property was taken in the name of the Church, but it is contended that Lauderdale furnished the money for the purchase, in consequence of which he became the equitable owner of the property, authorizing equity to declare a resulting trust in his favor—or, he being now dead, in favor of appellants.

Basis for appellants' contention is sought to be rested on the general principle that the trust of the legal estate results to the person who advanced the money. The rule is well established. Where one buys land in the name of another and pays the consideration money, generally, the grantee will be regarded as holding the land in trust for the purchaser. 3 Story's Equity, 14th Ed., p. 234, sec. 1597; 65 C. J. p. 382, sec. 154.

It is declared: This rule has its foundation in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the purchase-money intends the purchase to be for his own benefit, and not for another, and that the conveyance in the name of another is a matter of convenience and arrangement between the parties for collateral purposes. Perry on Trusts, 7th Ed., § 126, pages 190, 191; Montgomery v. McNutt, 214 Ala. 692, 108 So. 752.

But this is only a rule of presumption (65 C.J. p. 386, § 155) and applies in the absence of all rebutting circumstances. In other words, without circumstances to show a contrary purpose, the law presumes an intent on the part of the person advancing the money and taking title in another, that the former should reap the benefits of his purchase. It is after all, however, a question of intent. 26 R.C.L. 1214, 1215, § 57; 1220, § 64. And this presumption of an intention to create a resulting trust "is not of law but is one of fact, and may be rebutted. * * * The mere fact of payment of the purchase money will not always be sufficient to raise a clear presumption of trust." 65 C.J. 387–8, § 155.

It is said: "The rule has many exceptions, and the presumption does not arise, when the attendant circumstances are inconsistent with its existence. It is a mere presumption—a presumed intention—which the law raises, without any proof of the actual intention of the parties, other than the fact that one pays the consideration-money, while the other receives the title." Rose v. Gibson, 71 Ala. 35, 40; Story, § 1600.

Following the thesis then that this inferred intent to create a trust, which arises from the act of the payor in furnishing the purchase money, is not conclusive and may be rebutted or overcome by other evidence, it is also recognized that certain relationships, if existent between the grantee and payor, will afford an adverse inference in rebuttal of this normally presumed intention. 2 Bogert, Trusts and Trustees, p. 1360, § 454. Such cases are where the payor and grantee stand in certain fiduciary relations with each other. It is said that these are exceptions to the doctrine of resulting trust. Story, § 1600.

If the payor bears confidential relations with the grantee there may sometimes inhere such circumstances as will rebut the trust intent in the payor which is usually presumed where he and the grantee are strangers. And here, had there been no particular relation between Lauderdale and the Church the general principle of resulting trust would suffice to sustain appellants' claim. But the appellee was not a mere third person in the transaction nor were Lauderdale and appellee mere strangers to each other. He was pastor of the Church and had been for a long time. As such he sustained a close confidential relation to the Church. 45 Am. Jur. p. 742, § 30. And as regards the transaction here involved, his conduct in connection with it must be scrutinized in the light of this relationship.

The Church had been considering the purchase of this property for some time and when the pastor borrowed the money from Dr. Maclin with which to buy the property for church use, we do not think he is in such equitable status as to contend that the money so borrowed became his own so as to support an equitable ownership of the property by virtue of a resulting trust. Under these circumstances the presumption usually prevailing to sustain the trust is clearly rebutted. Or, at least, the intent to create the trust has not been established by that full and accurate proof which the law demands.

■ The settled rule of proof is that the trust must be established by clear, convincing and unequivocal evidence. Lashley v. Lashley, 219 Ala. 312, 122 So. 314; Merchant's National Bank of Mobile v. Bertolla, 245 Ala. 662, 18 So.2d 378. "The proof must correspond with the pleading, and must be clear, full, satisfactory and convincing. If the proof is uncertain; if it is doubtful and unsatisfactory, relief cannot be granted. The presumption arising from the conveyance, that it fully speaks the whole truth, must prevail until the contrary is established beyond reasonable controversy. The burden of removing this presumption rests upon the party asserting the contrary, and it is not enough for him to generate doubt and uncertainty." Lehman v. Lewis, 62 Ala. 129, 133.

■■ Rather than establishing unequivocally that a trust resulted, the evidence, with the rebutting circumstances appertaining in the relationship of pastor and church, sustains the conclusion of the trial court that Lauderdale was acting for the Church in the transaction. Indeed, the attorney with whom Lauderdale conferred and to whom he entrusted the business of procuring the deeds from the State was left under this impression. His testimony on cross-examination imported as much: Lauderdale came to his office and told him he was pastor of the Peace Baptist Church and that "they wanted to buy the property;" "they wanted to get a church out there." And, to corroborate this theory of the case, when this attorney sent the money to the State Auditor's Office for the deeds, title to the property was taken in the name of the Church. Clearly, there is warrant for the conclusion that Lauderdale, as pastor, was acting as agent for his Church in the purchase and the trial court must be affirmed as correct in so holding.

In these circumstances equity affords no relief to establish a resulting trust in the agent's favor. Although the preacher may have intended to profit from the transaction, as agent of the church he "may not expose himself to the suggestions of self-interest." Enslen v. Allen, 160 Ala. 529, 535, 49 So. 430, 431; 1 Perry on Trusts, § 206. He must not "traffic with the subject-matter of his agency, without the consent of his principal, so as to reap a profit for himself." Adams v. Sayre, 70 Ala. 318, 326.

■ It is the agent's duty, in all transactions concerning or affecting the subject of the agency, to act with due regard to the interest of the principal and with the utmost good faith and loyalty. The relationship is a fiduciary one demanding trust and confidence. Dudley v. Colonial Lumber Co., 223 Ala. 533, 137 So. 429; Enslen v. Allen, supra; 3 C.J.S., Agency, p. 6, § 138a.

■ Nor, with propriety in the observance of this obligation, can he acquire any individual interests adverse to those of his principal which involve the subject matter of the transaction. 3 C.J.S., Agency, p. 9, § 139. He must not, during the agency, assume any relationship with others inconsistent with the agency, nor may he purchase property when he has any duty in connection with the agency inconsistent with the character of purchaser. Enslen v. Allen, supra.

■ The rule is held applicable though there be no actual authority of purchase, if at the time of the purchase the agent assumed to act for the principal and purchased for his benefit. 3 C.J.S., Agency, p. 24, § 144c.

■ And in such cases the burden is upon the agent to establish his own good faith and that his individual purchase was with his principal's consent. Idem.

Testing the evidence adduced by the cited authorities, it must be held to have been lacking in those legal requisites to justify equity in declaring a resulting trust in the lands conveyed to the Church, and appellants were disentitled to such relief.

■ The next phase of the case relates to appellant, Dr. Maclin, who (with leave of the court) intervened as a party complainant. The evidence disclosed that

Lauderdale procured the money ($316) for the purchase of the property from Intervenor under the promise to execute and deliver to him a mortgage and notes totaling $500 as security for repayment. This was done but, questions of usury aside, inasmuch as Lauderdale had no title to the property the notes and mortgage were unenforceable against the Church property. The extent of Intervenor Maclin's claim against the property is, as was held by the trial court, that of a vendor's lien (by subrogation) for the unpaid balance of the $316 he had loaned for the purchase, plus accrued interest. Gibson v. Gibson, 200 Ala. 591, 76 So. 949; 18 A. L.R. p. 1100. The court found this balance to be $21.35 and decreed a lien on the property for the satisfaction thereof and under the view we have taken this holding appears to be sound and it is also affirmed.

It appears from the decree, and the evidence supports this conclusion, that the portion of Maclin's debt which was liquidated was paid in part by Lauderdale and in part by the Church. The amount appearing from the evidence to have been paid by Lauderdale was $70. The court, however, denied all relief to the Lauderdales and in this we think error prevailed.

The record fairly reflects the fact that Lauderdale, as pastor of the Church, had been entrusted with the matter of procuring the property for the Church and in this capacity, and under this agency, he did so. All of the parties are negroes and apparently lacking in the usual refinements of business skill, so some phases of proof must rest in inference. One inference, and quite substantial we think, is that in their efforts to discharge their responsibility to Maclin the pastor sometimes, and the Church at others, paid sums of money to the doctor on his debt. In our view, the evidence relating to this sustains the conclusion that the payments made by Lauderdale individually were not voluntary but were made within the scope of his agency for his principal and are entitled to be considered as advancements by him in behalf of his principal to which he, as such agent, is entitled to reimbursement.

The general rule is that an agent is entitled to reimbursement for advances made for the principal in the performance of his agency. Brower v. Fenner & Beane, 237 Ala. 632, 634, 188 So. 240; 3 C.J.S., Agency, p. 101, § 196; 2 Am. Jur. p. 231, § 294. "As a general rule, where an agent is employed or directed by another to do an act in his behalf, the law implies a promise of indemnity by the principal for damages resulting to the agent proximately from the execution of the agency, and of reimbursement for necessary expenses advanced or incurred by the agent in order to consummate that which he is directed to do. Under this rule the principal should reimburse the agent for, or exonerate him from, authorized payments on behalf of the principal; * * * (and) for money paid by the agent for the principal on the purchase of property, * * *." 2 Am.Jur. pp. 231, 232, § 294; Ann.Cas.1912D, p. 992.

In the circumstances disclosed it would be inequitable for the Church to reap the benefits of the payments made on the debt by Lauderdale without indemnifying his estate. "Unless otherwise agreed, the principal is subject to a duty to an agent, not barred by the illegality of his conduct, to reimburse him for * * * (e) payments resulting in benefit to the principal, made by the agent under such conditions that it would be inequitable for indemnity not to be made." Am.Law Ins. Restat. Agency, § 439, pp. 1018–19.

And the preacher, having borrowed the money from Maclin, incurred a personal liability to repay it. The money thus borrowed was used in the purchase of the Church property and, to the extent of Lauderdale's repayments on this debt, he was entitled to be subrogated to Maclin's lien for indemnity. The doctrine is "One who, acting in a representative or fiduciary capacity, incurs and satisfies obligations to the benefit of his principal, is subrogated * * * to the rights of the creditor against the principal." 60 C.J. pp. 781, 782, § 90.

Thus, we are at the conclusion that a lien against the property involved (subject to the prior lien of Maclin, who furnished the money in the first instance) should be decreed in favor of the Lauderdale appellants in the amount of $70, with legal interest. It is therefore the order and decree of this Court that the decree giving rise to the appeal be reversed with directions that it be amended so as to fix a lien on the property to satisfy the sum due the said appellants, with the customary provisions for payment of the amount found due, or in default thereof for sale in satisfaction of said lien.

The holdings in the premises compel us to the further conclusion that equity and justice demand payment of costs of court by appellee, and it is so ordered.

Affirmed in part and reversed and remanded in part, with directions.

THOMAS, FOSTER, LIVINGSTON, and STAKELY, JJ., concur.