44 So.2d 10

**BANKS v. BANKS et al.**

4 Div. 548.

Supreme Court of Alabama.

Feb. 2, 1950.

W. R. Martin, of Ozark, for appellant.

Chas. O. Stokes and Mike Sollie, III, of Ozark, for appellees.

STAKELY, Justice.

The bill of complaint in this case was filed by Myra Banks (appellant) against Oye Banks (appellee) her husband to establish a resulting trust in an undivided one-half interest in a certain house and lot in Ozark, Alabama. Peb Banks and Cornelia Banks, the parents of Oye Banks, were also made respondents to the bill in order to set aside a deed to the property executed by Oye Banks to his parents. The court set aside the deed, as we shall see, but refused to establish the trust. The appeal is from this decree. Only the ruling with reference to the trust, however, is challenged on this appeal.

The evidence was taken before a commissioner. It is not practicable to set it out in detail, McCrary et al. v. Matthews, 235 Ala. 409, 179 So. 367, but in substance it may be stated as follows. Oye Banks made a trade with J. E. Acker for the purchase of the house and lot in question for $1000. According to appellant, her mother Mary Warren and her sister Mary Alice Warren, on October 9, 1945, appellant gave to her husband the sum of $500.00 in cash, her money saved from her earnings at Camp Rucker, as one-half of the purchase money with which to buy the property from J. E. Acker, a lawyer living in Ozark. The money was being kept by Mary Warren for her daughter and the money was turned over to Oye Banks at the home of Mary Warren. Thereupon appellant, her grandmother, who had also been present at the home of Mary Warren when the money was turned over to Oye Banks, but who died before the suit was instituted, and Oye Banks went to the home of J. E. Acker. They found that J. E. Acker had already prepared a deed to the property in which Oye Banks alone was named as grantee. When appellant examined the deed and asked why her name was omitted as one of the grantees, as she was paying

one-half of the purchase price, she was informed by J. E. Acker that it was not necessary to name her as grantee since she was married to Oye Banks and thus fully protected. Relying upon this statement the deed as written was accepted.

Further according to the testimony of appellant, subsequently her husband in a drunken condition beat her so badly and so threatened her that she was compelled to leave him and go to the home of her father in Florida. While she was gone, Oye Banks made a deed to the property to Peb Banks and Cornelia Banks, his parents. She did not sign the deed. This is the deed which the court set aside and as to which there is no contention on this appeal.

Oye Banks denied that his wife gave him $500 to use as one-half the purchase price in buying the property. On the contrary he testified that he furnished $500 of his own money and borrowed from his parents the other $500 of the purchase price, that on the morning of the trade he deposited the borrowed money in the bank at Ozark. He testified that on the morning of the trade, accompanied by his wife and her grandmother, he went to the bank and drew out his entire deposit of $1001, then went to the home of J. E. Acker and paid over the agreed price of $1000, which was his money. His testimony as to his bank deposit and its withdrawal on the same day the deed is dated is corroborated by the records of the bank which were introduced in evidence. The bank records showed that deposits of $2 and $545 were made to the credit of Oye Banks on October 9, 1945, which added to money which had been on deposit to his credit for some months made a total deposit of $1001. His testimony as to borrowing $500 from his father is corroborated by the testimony of his father. He denied that the deed was delivered immediately after payment of the purchase money and he denied that they returned with the deed to the home of Mary Warren, the mother of Mary Alice Warren. On the contrary, according to him, no deed had been prepared or was delivered at the home of J. E. Acker and J. E. Acker gave the following written receipt signed by him which was introduced in evidence, "Received of Oye Banks One Thousand Dollars. For payment for house. I am to make him a deed to house today. J. E. Acker." J. E. Acker did not testify in the case. No explanation is shown by the record for his failure to testify. The receipt is not challenged.

Oye Banks admits that on the morning of the transaction he went to the home of Mary Warren. He admits that he was accompanied by his wife and her grandmother to the home of J. E. Acker. He also admits that although the deed was not there "she said something about her name being on it" and Mr. Acker "explained to her about the borrowed money and said that it was all right and then she could have her name put on the deed after the money was paid back." The witness was again asked, "She did ask why her name was not on the deed, that morning, up there at Mr. Acker's?" to which he replied "She said something about it and when he explained about the borrowed money she then spoke and said, 'I know I am not going to pay on it because it is your own money and I don't have anything in it'."

The deed to the property naming Oye Banks as sole grantee was introduced in evidence. It was recorded 2:30 P.M. Oct. 9, 1945. According to Oye Banks he got the deed from the Probate Court and turned it over to his wife's mother a "day or two afterwards." According to appellant when she left for Florida after her difficulty with her husband she told her mother to turn over the deed to her husband as she did not want any trouble about it. Oye Banks admitted that he "passed a few licks" on his wife but claims that he did so under provocation because of the late hours when she would come in at night.

Without controversy it is established that all negotiations in regard to the purchase of the property were carried on by Oye Banks, that he paid to the vendor, J. E. Acker, the entire purchase money and that the deed was made to him as sole grantee. Upon the one issue in the case

as to whether or not appellant paid $500 on the purchase price, the evidence is in sharp conflict with obvious decrepancies. It must be kept in mind that the result which appellant seeks is to engraft a resulting trust upon a conveyance absolute in its terms. Our cases make it abundantly clear and with good reason that when this result is sought, there is a presumption that the conveyance speaks the whole truth and must prevail until the contrary is established beyond reasonable controversy. Fowler v. Fowler, 205 Ala. 514, 88 So. 648; Heflin v. Heflin, 216 Ala. 519, 113 So. 535; Lauderdale v. Peace Baptist Church of Birmingham, 246 Ala. 178, 19 So.2d 538. The burden of proof to overcome such presumption rests upon complainant and the proof must be clear, full, satisfactory and convincing. Heflin v. Heflin, supra; Lehman v. Lewis, 62 Ala. 129.

We have given careful consideration to the evidence but must agree with the lower court that appellant failed to carry the burden of proof which is and should be on her in cases of this kind.

Affirmed.

BROWN, FOSTER, LAWSON and SIMPSON, JJ., concur.