Dorothy Sevigny appeals from a judgment declaring that certain certificates of deposit were payable to the estate of J.T. Munn. We affirm.
Sevigny filed a complaint for declaratory judgment against the defendants, Addie Lee McAdory, individually and as executrix of the estate of James Thornwell Munn ("J.T. Munn"), deceased; Guaranty Federal Savings and Loan Association ("Guaranty Federal"); City Federal Savings and Loan Association ("City Federal"); New South Federal Savings and Loan Association ("New South"); and Alabama Federal Savings and Loan Association ("Secor Bank"), requesting that the trial court "determine any appropriate questions of construction relating to [certificates of deposit in the names of Sevigny, McAdory, and J.T. Munn issued by the four defendant institutions][1] and declare [Sevigny's] rights, status or other legal relations under these certificates of deposit." McAdory filed an answer denying that Sevigny had any ownership interest in the four certificates and alleging that the addition of Sevigny's name on the certificates was the product of undue influence, fraud, or duress practiced upon J.T. Munn by Sevigny, or the result of the mistake or incompetency of J.T. Munn at the time the certificates were created, or a breach of fiduciary duty. Each of the defendant institutions filed either a motion to dismiss or a motion for summary judgment. The trial court granted the motions as to three of the defendant institutions — Guaranty Federal, City Federal, and Secor Bank — but denied the motion as to New South. The parties remaining at trial were Sevigny, McAdory, and New South. These parties entered into a stipulation, under the terms of which they submitted the case to the trial court on the basis of certain medical records, the banking records of the four defendant institutions, and the depositions of Sevigny and McAdory. Sevigny appealed as to all four institutions.
Sevigny contends that pursuant to Ala. Code 1975, § 5-16-45
(the statutory provision that sets forth the law of survivorship as to accounts with savings and loan associations), and based on the holding in Johnson v. Sims,501 So.2d 453 (Ala. 1986), she is entitled to a one-half interest in the certificates of deposit.
McAdory contends that the certificates of deposit should pass through the estate of J.T. Munn, deceased, according to the terms of his last will and testament; that the names of McAdory and Sevigny were added to these accounts as agents for J.T. Munn to evidence the fiduciary relationship they occupied as his agents.
The trial court found, in pertinent part, as follows:
 "Based upon the facts contained in the material submitted . . ., there are four *Page 886 
accounts at issue in this case. . . . On September 20, 1988, when J.T. Munn died, all of these accounts were in the names of J.T. Munn, Addie McAdory, and Dorothy Sevigny. . . .
 "During his lifetime, J.T. Munn executed a durable power of attorney naming Addie McAdory as his true and lawful attorney, and a durable power of attorney naming Dorothy D. Sevigny as his true and lawful attorney. Both of these documents were apparently signed on May 8, 1986. Pursuant to the authority in the power of attorney, both Addie McAdory and Dorothy Sevigny caused the accounts to be opened with all three names shown as owners of the account. The court, therefore, finds that Addie McAdory and Dorothy Sevigny were both acting in furtherance of their representative capacities as agents for J.T. Munn when they executed the signature cards. . . . In other words, the [trial] court finds that Addie McAdory and Dorothy Sevigny held their interests in the accounts as agents for J.T. Munn.
 "It is, therefore, ORDERED, ADJUDGED and DECREED by the court as follows:
 "ONE: All the proceeds held in the accounts involved in this case are due and payable to the estate of J.T. Munn.
 "TWO: The court finds no evidence of undue influence or fraud practiced upon J.T. Munn by any party."[2]
This case was submitted to the trial court without an evidentiary hearing, but, by stipulation, upon a submission of the depositions of Sevigny and McAdory, certain medical records, and the bank records from the four defendant institutions. Therefore, the usual presumption of correctness applied to the trial court's findings in an ore tenus case is not applicable here. Phillips v. Knight, 559 So.2d 564
(Ala. 1990). Where the evidence is stipulated, and no testimony is presented orally to the trial court, this Court reviews the evidence without any presumption of correctness, i.e., without any presumption in favor of the trial court's findings. Bownesv. Winston County, 481 So.2d 362 (Ala. 1985). In such a situation, this Court sits in judgment on the evidence. Id.
Therefore, the issue for our review is whether the trial court erred, as a matter of law, in its finding that McAdory and Sevigny held their interests in the certificates of deposit at issue as agents of J.T. Munn, and its holding that the proceeds of those certificates of deposit at issue were payable to the estate of J.T. Munn, deceased.[3]
A power of attorney is defined as "[a]n instrument in writing whereby one person, as principal, appoints another as his agent and confers authority to perform certain specified acts or kinds of acts on behalf of principal. An instrument authorizing another to act as one's agent. . . . The agent is attorney in fact. . . ." Black's Law Dictionary 1171 (6th ed. 1990). When one accepts the agency, she implicitly covenants to use the powers conferred upon her for the sole benefit of the party conferring such power, consistent with the purposes of the agency relationship. See, Dudley v. Colonial Lumber Co.,223 Ala. 533, 137 So. 429 (1931). Therefore, when one accepts the power of attorney, she impliedly covenants to use the powers bestowed upon her for the sole benefit of the one conferring that power on her, consistent with the purposes of the agency relationship represented by the power of attorney. Powers of attorney will be strictly construed, *Page 887 
restricting the powers to those expressly granted and those incidental powers that are necessary to effectuate the expressed powers. Hall v. Cosby, 288 Ala. 191, 258 So.2d 897
(1972). The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing. See, Williams v. Williams,497 So.2d 481 (Ala. 1971); Lauderdale v. Peace Baptist Church ofBirmingham, 246 Ala. 178, 19 So.2d 538 (1944).
 "An agent sustains a position of trust toward his principal and in all transactions affecting the subject of the agency, the law dictates that he must act in the utmost good faith and must make known to his principal each and all material facts within his knowledge which in any way affect the transaction and subject matter of his agency.
 "The law sedulously regards this principle and acts of an agent which tend to violate this fiduciary obligation are prima facie voidable . . . and are considered, in law, as 'frauds upon confidence bestowed.' "
Meyers v. Ellison, 249 Ala. 367, 369, 31 So.2d 353, 355 (1947). (Citations omitted.) (Emphasis added.) An agent is not permitted to occupy a position that would allow her to profit as a result of that agency relationship. Lauderdale v. PeaceBaptist Church of Birmingham, supra. In Lesnick v. Lesnick,577 So.2d 856, 859 (Ala. 1991), this Court held that a guardian's commingling of the funds of her ward with those of her own and those owned jointly, thereby making it impossible to determine whose funds were used for what purposes, was sufficient cause for the probate court to include jointly owned property in an accounting, because "[the] joint tenancy principle of law does not defeat a guardian's obligations to act in her fiduciary capacity as custodian of the ward's estate." The agent, if otherwise competent, may testify as a witness as to the nature and extent of her authority. See, McCarty v. Skelton, 233 Ala. 531,172 So. 901 (1937).
Our review of the evidence, which was stipulated to by the parties, supports the following statement:
J.T. Munn had been married to Ruby Dunn Munn, who predeceased him, dying on December 31, 1987. They had no children. McAdory and Sevigny were nieces of J.T. Munn and his wife. Sometime around May 8, 1986, in virtually identical documents, Munn executed a durable power of attorney to McAdory and a durable power of attorney to Sevigny in which he gave themextensive authorization to handle his affairs. Sevigny was instrumental in procuring the durable powers of attorney in her name and in McAdory's name. J.T. Munn also nominated McAdory and Sevigny to serve as his "guardian, curator or other fiduciary charged with the management of [his] property or [his] estate." Beginning in December 1985 (prior to the execution of the durable powers of attorney in 1986), McAdory and Sevigny assisted J.T. Munn with some of his business affairs and legal matters.
Subsequently, because of J.T. Munn's decreased mental capacity and pursuant to the authority vested in her by the power of attorney, McAdory created the four certificates of deposit at issue. The money in the certificates belonged exclusively to J.T. Munn and his wife during their lifetimes, and neither McAdory nor Sevigny contributed any money to the accounts or made any withdrawals from the accounts during J.T. Munn's lifetime except for his benefit. In creating each certificate, McAdory telephoned the financial institution on behalf of J.T. Munn to obtain quotes on the prevailing interest rates. She then picked up J.T. Munn from the nursing home where he was living and took him to the specific savings and loan association. Although J.T. Munn went with McAdory, she was the one who conversed with the bank officials, while he sat in the lobby or at the desk with her and the bank official. On a previous occasion (unrelated to the certificates of deposit at issue), McAdory had been informed by a representative of First Alabama Bank (not a party to this suit) that the power of attorney executed by J.T. Munn was insufficient for her to conduct *Page 888 
banking activities as his agent.[4] Thereafter, she became concerned about the sufficiency of the power of attorney to handle J.T. Munn's affairs, so for each account McAdory instructed the bank officials to open the account with J.T. Munn's name first and then to add her name and Sevigny's name as additional signatories. McAdory told the bank officials to add Sevigny's name to each account so that if anything happened to McAdory while J.T. Munn was still living, Sevigny could assist him with his banking affairs. The bank official then prepared the necessary signature card, which McAdory took to J.T. Munn and requested that he sign. At no time did he read the signature card, nor did anyone read or explain it to him. In each case, J.T. Munn merely signed his name as requested and returned the card to McAdory, who then signed her own name and mailed the card to Sevigny, who lived in Florida, along with a cover letter requesting that Sevigny sign the card and return it in the self-addressed envelope either to McAdory or to the specific bank. According to the deposition testimony of McAdory, who created the certificates of deposit at issue, she never instructed any of the financial institutions to create a survivorship account:
 "Q. At the time that you requested the signature cards to include your name and Sevigny's name, did you request that a survivorship account be created?
 "A. No. I only asked that the cards be prepared showing my uncle's name, my name, and the name of [Sevigny].
 "Q. Did any of the bank tellers ever explain the survivorship aspects of these accounts to you?
"A. No.
". . . .
 "Q. Did any of the bank tellers ever tell you [the legal effects of a survivorship account] when you opened these accounts?
"A. No.
". . . .
 "Q. Did you ever explain the death aspects of the survivorship bank accounts to your uncle?
 "A. No. Because I was not aware of these until after my uncle died. And if I had known this, I would never have opened these survivorship accounts."
J.T. Munn died on September 20, 1988, at 90 years of age. On November 10, 1988, his last will and testament was admitted to the probate court, and McAdory was appointed as his executrix. McAdory and Sevigny were designated beneficiaries under the will — Sevigny received $5,000 and McAdory received $500 — and the payment of these amounts, as well as the other specific bequests and debts of the estate, was accomplished without the use of the disputed accounts, which had a date of death value of $315,349.93 and represented approximately 79% of the assets of J.T. Munn. Irma D. McHugh[5] (the surviving sister of J.T. Munn's deceased wife) was the residuary beneficiary under the terms of the will, who would receive the proceeds of the certificates of deposit if the trial court determined that the certificates passed to the estate.
Based on the foregoing, we hold that the trial court did not err, as a matter of law, in finding that McAdory and Sevigny held their interests in the certificates of deposit as agents for J.T. Munn and, therefore, that the proceeds of the certificates of deposit were payable to the estate of J.T. Munn, deceased. We affirm the trial court's judgment.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] The four certificates of deposit at issue are as follows: $42,000 at City Federal Savings and Loan Association; $73,165 at Guaranty Federal Savings and Loan Association; $100,000 at New South Federal Savings and Loan Association; and $100,000 at Alabama Federal Savings and Loan Association (Secor Bank).
[2] Although these defenses were raised in the answer, McAdory did not argue them to the trial court, nor does she challenge the trial court's finding as to these defenses on appeal.
[3] We note that considerable argument was made as to the survivorship language, or lack thereof, contained in the certificates of deposit and, therefore, as to the applicable Code provision to be considered for the disposition of the proceeds of those certificates, i.e., Ala. Code 1975, § 5-16-45
(the provision governing the payment and ownership of jointly held funds on deposit in savings and loan associations) or §35-4-7 (the provision dealing with bank accounts in which there is no survivorship language). However, because of our resolution of the issue in this case, we pretermit any discussion as to § 5-16-45 or § 35-4-7.
[4] In the interrogatories posed to Guaranty Federal Savings and Loan Association, McAdory asked "whether or not [Guaranty Federal] offer[ed] an agency account or any other account in which one person [could] transact banking business as agent or representative of another," to which Guaranty Federal responded, "No."
[5] Irma D. McHugh was not a party to this suit. *Page 889