THOMPSON, Presiding Judge.
 

 On January 25, 2005, Jerry Wilson Har-relson, Sr. (“Jerry”), filed a petition in the Tallapoosa Probate Court (“the probate court”) seeking to probate the will of his
 
 *1006
 
 father, Horace Wilson Harrelson (“Horace”). On that same date, the probate court entered orders admitting the will to probate and granting letters testamentary allowing Jerry to serve as executor of Horace’s estate. Thereafter, Jerry Wilson Harrelson, Jr. (“Will”), and Terri Elizabeth Harrelson (“Terri”) filed a petition in the probate court asking that court to require Jerry to obtain a bond. Will and Terri are Jerry’s children and are Horace’s grandchildren. The documents filed in the probate court indicate that Will and Terri are estranged from their father and that they expected to inherit a combined total of more than $450,000 from the proceeds of certain certificates of deposit (“CDs”) that, they asserted, were part of Horace’s estate.
 

 In July 2005, Jerry filed a petition in the probate court and in the Tallapoosa Circuit Court (“the circuit court”) seeking to remove the proceedings pertaining to the administration of Horace’s estate to the circuit court. Both the probate court and the circuit court entered orders approving the transfer of the matter to the circuit court.
 

 In the circuit court, on July 20, 2006, Will and Terri filed a document they entitled “Verified Motion for a Declaratory Judgment.” We note, however, that “[t]he substance of a motion and not its style determines what kind of motion it is.”
 
 Evans v. Waddell,
 
 689 So.2d 23, 26 (Ala.1997). Will and Terri’s July 20, 2006, motion did not initiate a separate declaratory-judgment action; rather, that motion was, in substance, a motion seeking a summary judgment pursuant to Rule 56, Ala. R. Civ. P. Accordingly, we hereinafter refer to that motion as a summary-judgment motion.
 

 In their July 20, 2006, summary-judgment motion, Will and Terri alleged that Jerry had improperly altered the title to certain CDs owned by Horace to reflect joint ownership with rights of survivorship in the CDs by Horace and Jerry. Will and Terri alleged that Jerry had breached his fiduciary duty to Horace in altering the ownership of the CDs, and they sought a determination that the CDs were the property of Horace’s estate. Will and Terri submitted certain exhibits in support of their July 20, 2006, summary-judgment motion.
 

 Jerry opposed the July 20, 2006, summary-judgment motion, and he later filed his own motion for a summary judgment. Jerry submitted a number of exhibits in support of his summary-judgment motion. Will and Terri filed an opposition to Jerry’s summary-judgment motion, which they also supported with certain evidentia-ry submissions.
 

 On October 31, 2007, the circuit court entered a summary judgment in favor of Jerry in which it concluded that Jerry was the rightful owner of all the CDs in dispute and that Will and Terri were not entitled to any portion of the proceeds of those CDs. Will and Terri filed a postjudgment motion, which the circuit court denied. Will and Terri timely appealed, and our supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 

 A motion for a summary judgment is properly granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.;
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860 (Ala.1988). “When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present ‘substantial evidence’ creating a genuine issue of material fact.”
 
 Ex parte Alfa Mut. Gen. Ins. Co.,
 
 742 So.2d 182, 184 (Ala.1999) (quoting
 
 Bass v. SouthTrust
 
 
 *1007
 

 Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989)). “Substantial evidence” is “evidence of such a weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the movant.
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412 (Ala.1990).
 

 The record indicates that, during their lifetimes, Horace and Christine Harrelson, Horace’s wife and Jerry’s mother, had accumulated a total of eight CDs with a total value of approximately $458,000. Three separate banks, Aliant Bank, Bank of Dadeville, and Colonial Bank, had each issued more than one of the eight CDs. Horace and Christine held each of the CDs as joint owners with the right of survivor-ship.
 

 On May 30, 2000, Horace executed his will. Horace’s will provided, in pertinent part, that Christine was to inherit Horace’s entire estate. In the event that Christine predeceased Horace, the will provided that Jerry was to inherit Horace’s home and the funds in a Merrill Lynch account and that the “rest and remainder” of his estate was to be placed in a trust for Will and Terri. Christine died in October 2004, and Horace survived her. Although Horace made no specific bequest to them in his will, Will and Terri believed they would inherit the proceeds of the eight CDs as the “rest and remainder” of Horace’s estate.
 

 On May 30, 2000, the same date on which he had executed his will, Horace also executed a durable power of attorney appointing Jerry as his attorney-in-fact. Among other things, in that durable power of attorney, Horace authorized Jerry to take the following actions:
 

 “5. Open banking accounts, either savings, checking or other, in such Bank or Banks as from time to time appear wise and endorse all checks, drafts or credits, payable to me, draw drafts upon my account, in my name, or in his name, as Attorney-in-Fact, borrow such money as is or may be necessary in his judgment and in the interest of my properties, or purchase such investments as might be appropriate in his judgment from any accumulations in my said Bank account or accounts.
 

 “6. Place in effect, renew or purchase insurance of any kind whatsoever, and pay any insurance premium due on that insurance in effect, and file such claims as may from time to time arise with those insurance companies appropriate to any loss.
 

 “7. Transact all business and do each, every and all act or acts or things and execute all writings, assurance or instruments or legal documents of every kind or nature, which may be requisite, necessary, essential or proper to effect any and all of the foregoing, as the same pertains to me, with the same validity and as fully as I could do, if present and personally acting, with full power of substitution, and I do hereby ratify and confirm whatsoever my Attorney-in-Fact hereby nominated and appointed shall and may do, pursuant hereto.”
 

 On December 10, 2004, Jerry used the durable power of attorney to redeem each of the eight CDs; Jerry purchased eight new CDs, naming himself and Horace as joint owners with rights of survivorship in the new CDs. Aliant Bank issued four of those CDs with a total value of $217,058.71; Bank of Dadeville issued two
 
 *1008
 
 CDs with a total value of $135,006; and Colonial Bank issued two CDs totaling $66,034.26 in value. It is undisputed that the eight new CDs were funded entirely by funds owned by Horace and that Jerry did not contribute any amounts to those CDs. Horace was not present when Jerry obtained the new CDs.
 

 Horace died on January 3, 2005. Thereafter, Aliant Bank, Bank of Dadeville, and Colonial Bank each paid to Jerry the proceeds from the new CDs that each of those institutions had issued. In the probate court and in the circuit court, Will and Terri disputed that Jerry was the rightful owner of the proceeds from the CDs.
 

 Will and Terri contend that Jerry breached his fiduciary duty to Horace by placing the new CDs in his and Horace’s names as joint tenants with rights of sur-vivorship; as an alternative theory, they contend that Jerry held his title in the CDs as an agent for Horace. In them evidentiary filings in the circuit court, Will and Terri submitted documents demonstrating that Jerry, using the durable power of attorney, redeemed the eight CDs held in Horace’s and Christine’s names and obtained the new CDs in both his and Horace’s names. In addition, Will and Tem submitted the affidavit of their mother, Sharon Harrelson, who testified that on December 15, 2004, Horace told her, among other things, that
 

 “he had provided for his grandchildren [ (Will and Terri) ] in his Will and that they would not have to work if they did not want to. In addition, [Horace] said that they should not want for anything and that each of them could build a house if they wanted. I also remember that Horace made me promise that if Jerry did not give [Will and Terri] their money, I would hire a good attorney for the kids.”
 

 In response, Jerry argued that Horace directed him to place the CDs in their joint names and that he used the durable power of attorney to fulfill Horace’s wishes. In support of that argument, Jerry submitted as attachments to his summary-judgment motion the deposition testimony of Sandra Pope, a customer-service representative for the Bank of Dadeville, and Gayle Huff, a customer-service representative for Ali-ant Bank. Both Pope and Huff made statements indicating that, as the circuit court summarized, “Horace was a knowledgeable banking customer who was smart in handling his money.”
 

 In addition, Pope testified that, at some point after Christine’s death but before Jerry redeemed the old CDs and obtained the new CDs, Horace had sat at her desk and had told her and another Bank of Dadeville employee that he wanted to place Jerry’s name on the CDs. Huff testified that, in an effort to verify that the durable power of attorney Jerry had prof-erred remained in effect and had not been revoked, she called Horace to inquire whether Jerry had the authority to transfer the ownership of the CDs into his and Horace’s names. Huff testified that “I just asked [Horace] was it all right for Jerry to do this, that Jerry was here. And he said, yes, he was not able to come.” Jerry presented no evidence pertaining to the CDs issued by Colonial Bank.
 

 In entering its summary judgment in favor of Jerry, the circuit court noted that Will and Terri had failed to present any evidence in contradiction to the testimony of Pope and Huff. The circuit court also relied on § 35-4-7, Ala.Code 1975, which provides:
 

 “When one joint tenant dies before the severance, his interest does not survive to the other joint tenants but descends and vests as if his interest had been severed and ascertained; provided,
 
 *1009
 
 that in the event it is stated in the instrument creating such tenancy that such tenancy is with right of survivor-ship or other words used therein showing such intention, then, upon the death of one joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument. This shall include those instruments of conveyance in which the grantor conveys to himself and one or more other persons and in which instruments it clearly appears that the intent is to create such a survivorship between joint tenants as is herein contemplated.”
 

 On appeal, Will and Terri argue that the circuit court erred in entering its summary judgment in favor of Jerry. Initially, we note that Will and Terri cite several different legal theories and a number of cases in support of their arguments on appeal. However, only one of those case citations,
 
 Sevigny v. New South Federal Savings & Loan Ass’n,
 
 586 So.2d 884 (Ala.1991), was cited to the circuit court, and the remaining citations in Will and Terri’s brief on appeal are all cited in
 
 Sevigny,
 
 supra.
 

 Will and Terri argue that Jerry breached his fiduciary duty to Horace and that Jerry held the CDs as an agent for Horace rather than in his own name. In asserting that argument, Will and Terri rely on
 
 Sev-igny v. New South Federal Savings & Loan Ass’n,
 
 supra, and the cases cited therein.
 

 In
 
 Sevigny,
 
 Sevigny and McAdory were the nieces of Munn. Before his death, Munn gave Sevigny and McAdory a power of attorney to handle his financial affairs. Munn’s assets included four CDs from various financial institutions. For various reasons, McAdory became concerned about whether the power of attorney was sufficient to enable Sevigny and her to handle Munn’s financial affairs, so she instructed the financial institutions holding the CDs to alter the CDs to provide that Munn, Sevigny, and McAdory owned the CDs jointly with rights of survivorship. In addition to her own signature, McAdory obtained the signatures of Munn and Sev-igny to effect that alteration to the ownership of the CDs.
 

 After Munn’s death, Sevigny claimed a one-half interest in the CDs. However, McAdory argued that she and Sevigny had owned interests in those CDs only as agents for Munn. The trial court concluded that the evidence supported McAdory’s claims and concluded that McAdory and Sevigny had obtained their interests in the CDs only as agents for Munn. Accordingly, the trial court found that the proceeds of the CDs were payable to Munn’s estate. Our supreme court affirmed, holding, in part:
 

 “A power of attorney is defined as ‘[a]n instrument in writing whereby one person, as principal, appoints another as his agent and confers authority to perform certain specified acts or kinds of acts on behalf of [a] principal. An instrument authorizing another to act as one’s agent.... The agent is attorney in fact....’
 
 Black’s Law Dictionary
 
 1171 (6th ed.1990). When one accepts the agency, she implicitly covenants to use the powers conferred upon her for the sole benefit of the party conferring such power, consistent with the purposes of the agency relationship. See,
 
 Dudley v. Colonial Lumber Co.,
 
 223 Ala. 533, 137 So. 429 (1931). Therefore, when one accepts the power of attorney, she impliedly covenants to use the powers bestowed upon her for the sole benefit of the one conferring that power on her, consistent with the purposes of the agency relationship represented by the power of attorney. Powers of attorney will be strictly construed, restricting the powers to those expressly granted and
 
 *1010
 
 those incidental powers that are necessary to effectuate the expressed powers.
 
 Hall v. Cosby,
 
 288 Ala. 191, 258 So.2d 897 (1972). The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing. See,
 
 Williams v. Williams,
 
 497 So.2d 481 (Ala.[1986]);
 
 Lauderdale v. Peace Baptist Church of Birmingham,
 
 246 Ala. 178,19 So.2d 538 (1944).
 

 “ ‘An agent sustains a position of trust toward his principal and in all transactions affecting the subject of the agency, the law dictates that he must act in the utmost good faith and must make known to his principal each and all material facts within his knowledge which in any way affect the transaction and subject matter of his agency.
 

 “ ‘The law sedulously regards this principle and
 
 acts of an agent which tend to violate this fiduciary obligation are prima facie voidable ... and are considered, in law,
 
 as
 
 “frauds upon confidence
 
 bestowed.” ’
 

 “[Myers] v. Ellison,
 
 249 Ala. 367, 369, 31 So.2d 353, 355 (1947). (Citations omitted.) (Emphasis added.) An agent is not permitted to occupy a position that would allow her to profit as a result of that agency relationship.
 
 Lauderdale v. Peace Baptist Church of Birmingham,
 
 supra. In
 
 Lesnick v. Lesnick,
 
 577 So.2d 856, 859 (Ala.1991), this Court held that a guardian’s commingling of the funds of her ward with those of her own and those owned jointly, thereby making it impossible to determine whose funds were used for what purposes, was sufficient cause for the probate court to include jointly owned property in an accounting, because ‘[the] joint tenancy principle of law does not defeat a guardian’s obligations to act in her fiduciary capacity as custodian of the ward’s estate.’ The agent, if otherwise competent, may testify as a witness as to the nature and extent of her authority. See,
 
 McCarty v. Skelton,
 
 233 Ala. 531, 172 So. 901 (1937).”
 

 Sevigny v. New South Fed. Savs. & Loan Ass’n,
 
 586 So.2d at 886-87.
 

 The difference between this case and
 
 Sevigny,
 
 supra, is that, with regard to the CDs issued by Aliant Bank and the Bank of Dadeville, the record in this case does not contain substantial evidence indicating that Jerry held his interest in those CDs as an agent of Horace, nor is there evidence indicating that Jerry breached his fiduciary duty to Horace with regard to those CDs. Rather, the undisputed evidence is that Horace consented to Jerry becoming a joint owner with rights of sur-vivorship in those six CDs. Will and Terri presented evidence indicating that, a few days after the change in the ownership interests for those six CDs was effected, Horace told their mother that they could expect a substantial inheritance from him. However, Will and Terri did not present any evidence indicating that Horace had not intended to allow Jerry to place himself as an owner of the six CDs or that he did not know about that change in ownership of those CDs. In contrast, Jerry presented evidence indicating that Horace had intended that Jerry use the power of attorney to change the ownership of the CDs held by Aliant Bank and the Bank of Dadeville and that Horace had given his permission for Jerry to do so. There is no contention in this case that Horace lacked capacity or was unable to direct his financial transactions until the date of his death. Accordingly, we conclude that, with regard to the six CDs issued by Aliant Bank and the Bank of Dadeville, the facts of this case are distinguishable from those of
 
 Sev-igny,
 
 supra, and that Will and Terri have failed to demonstrate error with regard to their arguments on the issues of agency and fiduciary duty.
 

 
 *1011
 
 Will and Terri also argue that the language contained in the durable power of attorney, quoted earlier in this opinion, did not authorize Jerry to create an interest for himself in the CDs. In
 
 Lamb v. Scott,
 
 648 So.2d 972, 973 (Ala.1994), our supreme court held that, when a power of attorney did not specifically state that an agent could convey property to herself, the agent was without power to do so.
 
 See also Dillard v. Gill,
 
 231 Ala. 662, 166 So. 430 (1936) (affirming a judgment setting aside conveyances made by a husband to himself pursuant to a power of attorney for the wife).
 

 However, in
 
 Miller v. Jackson Hospital & Clinic,
 
 776 So.2d 122 (Ala.2000), our supreme court held that a power of attorney was not required to specifically grant a patient’s uncle the right to file a personal-injury action seeking damages for injuries sustained by the patient because the initiation of the litigation did not involve self-dealing. In reaching its holding in that case, our supreme court distinguished the facts of that case from those of
 
 Lamb v. Scott,
 
 supra. The supreme court stated:
 

 “The situation presented by
 
 Lamb [v. Scott,
 
 supra] involved self-dealing. This Court held that in order to act against the intent of the donee as expressed in her will, the attorney-in-fact had to have the express authority to do so. 643 So.2d at 973. In other words, this present case is distinguishable from
 
 Lamb.
 
 The power of attorney in
 
 Lamb
 
 made no express grant of authority to engage in self-dealing, and the self-dealing appeared to go against the true intent of the donee. See, also,
 
 Hall v. Cosby,
 
 288 Ala. 191, 258 So.2d 897 (1972), and
 
 Dillard v. Gill,
 
 231 Ala. 662, 166 So. 430 (1936) (holding that authority to self-deal must be specifically granted).”
 

 Miller v. Jackson Hosp. & Clinic,
 
 776 So.2d at 124-25. Similarly, in
 
 Lisenby v. Simms,
 
 688 So.2d 864, 867 (Ala.Civ.App. 1997), this court noted that “it is clear that our supreme court has determined that conveyances of real property and transfers of personal property by the donee to himself are not authorized under a power of attorney unless such powers are expressly granted.”
 

 The transfer by Jerry of an interest in the CDs to himself was arguably an instance of self-dealing. The undisputed evidence, however, indicates that Jerry created his interest in the CDs issued by Aliant Bank and the Bank of Dadeville either at Horace’s direction or with Horace’s consent. Thus, it is irrelevant whether the power of attorney specifically granted Jerry the authority to self-deal with regard to those six CDs because Jerry was acting at the direction of or with the permission of Horace. Will and Terri do not contend that Jerry lacked authority under the power of attorney to take actions as directed by Horace. Further, Will and Terri have conceded in their brief submitted to this court that they are not contending that Horace lacked the capacity to properly make financial decisions until the time of his death. Accordingly, because the evidence indicates that the transfer of the interest in the CDs issued by Aliant Bank and the Bank of Dadeville to Jerry was done with Horace’s consent, we cannot say that Will and Terri have demonstrated error with regard to this argument.
 
 Miller v. Jackson Hosp. & Clinic,
 
 776 So.2d at 124-25.
 

 In their motion for a summary judgment, Will and Terri alleged that Jerry had acted without authority in transferring to himself an interest in the CDs.
 
 See Ex parte General Motors Corp.,
 
 769 So.2d 903, 908 (Ala.1999) (“1 “[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of ‘the pleadings, depositions, answers to interrogatories,
 
 *1012
 
 and admissions on file, together with the affidavits, if any’ which it believes demonstrate the absence of a genuine issue of material fact.” ’ ”) (quoting
 
 Lawson State Cmty. Coll. v. First Continental Leasing Corp.,
 
 529 So.2d 926, 936 (Ala.1988), quoting in turn
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In response, Jerry presented substantial evidence regarding Horace’s intent with regard to the CDs issued by Aliant Bank and the Bank of Dadeville, two of the three financial institutions that issued the new CDs; however, Jerry did not present any evidence pertaining to whether he had authority from Horace to transfer to himself an interest in the two CDs issued by Colonial Bank.
 
 [1]
 
 The power of attorney did not specifically allow Jerry to engage in transactions that might constitute self-dealing, and there is no specific evidence indicating that Horace consented to or directed Jerry to transfer to himself an interest in the two CDs issued by Colonial Bank. Accordingly, we must conclude that the circuit court erred in entering a summary judgment in favor of Jerry with regard to the two CDs issued by Colonial Bank.
 

 We affirm the summary judgment as it pertains to the CDs issued by Aliant Bank and the Bank of Dadeville. We reverse that part of the summary judgment pertaining to the ownership of the CDs issued by Colonial Bank and remand the case to the circuit court for further proceedings.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . In his own motion for a summary judgment, Jerry did not address his authority to transfer an interest in the two CDs issued by Colonial Bank to himself as a joint owner with Horace.