Rel: February 9, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————

### SC-2022-0863

————————————

## David Roberson and Anna Roberson

### v.

## Drummond Company, Inc.

### Appeal from Jefferson Circuit Court
### (CV-19-901210)

PARKER, Chief Justice.

David Roberson and Anna Roberson appeal from an order entered by the Jefferson Circuit Court dismissing their claim for indemnification from Drummond Company, Inc. ("Drummond"), for damages stemming

from David's federal conviction for bribery. Because we conclude that the damages the Robersons seek are not available through indemnification, we affirm the order dismissing their indemnification claim.

## I. Facts

David was a vice president of Drummond. In 2013, the Environmental Protection Agency proposed placing polluted property in Jefferson County on its "National Priorities List" for cleanup. The cleanup costs were estimated at over $100 million. To avoid responsibility for the cleanup costs, Drummond hired Balch & Bingham, LLP ("Balch"), to conduct a public-relations campaign to prevent the property from being placed on the National Priorities List.  As part of that campaign, Balch employed the Oliver Robinson Foundation, which was controlled by then-Representative Oliver Robinson, to convince Birmingham residents not to have their property tested for toxins. After making payments to the foundation, Balch submitted invoices to Drummond for reimbursement.

After receiving Balch's invoices, Drummond's general counsel asked David to approve payment of the invoices. David asked Joel Gilbert, a lobbyist employed by Balch, if he had asked Balch's ethics lawyers whether the plan was ethical and legal. Gilbert represented to

David that Balch's ethics lawyers had reviewed the plan and determined that it was legal. David then approved payment of Balch's invoices. Thereafter, because he approved the payments to Balch, David was convicted of bribery in violation of federal law and was sentenced to 30 months in prison.

After his conviction, David was allowed to remain free on bond pending his appeal. Drummond retained David as an employee on administrative leave and continued paying him his salary and benefits. A little over six and a half months later, Drummond terminated David's employment.

The Robersons sued Drummond and Balch. In their third amended complaint, which is the operative complaint, the Robersons asserted six claims against Drummond. In Count 1, the Robersons asserted a claim for indemnification. In summary, the Robersons alleged that Drummond, through its general counsel, had directed David to make the payments that the jury in the criminal proceedings later found to be bribes; that David had not known the payments were bribes and had acted in good faith on Gilbert's misrepresentation that Balch's in-house ethics lawyers had determined that the plan was legal; that he had incurred damages

3

as a result of making the payments; and that Drummond had a duty to indemnify him for those damages, but had failed to do so.

In Count 12, the Robersons asserted a claim of promissory fraud based on Drummond's alleged promise to the Robersons that "they had nothing to worry about" and that Drummond would keep David on paid administrative leave until his appeal of his conviction was complete and would pay his full salary, bonuses, and benefits.

Drummond moved to dismiss the Robersons' claims against it in the third amended complaint. After a hearing, the circuit court dismissed the indemnification claim, ruling:

> "Indemnification generally comes into play in a contractual arrangement between the Parties. [The Robersons] assert[] in the [third amended] Complaint that … Drummond had and 'has a duty to indemnify [David] for all losses and damages that he has suffered and will suffer as a direct result of performing the duties assigned to him by Drummond via its General Counsel.' … The Court acknowledges that Compensatory Damages are awarded to a Plaintiff, who has proven his claim(s), to fairly and reasonably compensate him for the harm caused by another's wrongdoing. The Court is unaware of an automatic duty to Indemnify one for all losses or damages currently suffered and anticipated to [be] suffer[ed] in the future as a result of performing assigned 'duties,' without an agreement between the Parties establishing such a duty. [The Robersons] have neither produced nor alleged the existence of a contract or agreement between the [Robersons] and … Drummond to

4

> establish such a duty. … [The Robersons] do not allege any contract or agreement between [them] and … Drummond that places a 'duty' on … Drummond to compensate [the Robersons] for all losses or damages suffered now and anticipated to [be] suffer[ed] in the future. A duty to indemnify, such as alleged by the [Robersons], is not automatic. The Court FINDS that [the Robersons] cannot prove any relief consistent with the allegations set forth in the [third amended] Complaint to support the Count of Indemnification."

(Capitalization in original; emphasis omitted.) The circuit court denied Drummond's motion as to the Robersons' other claims against Drummond.

The Robersons then filed a written motion to reconsider. First, the Robersons argued that the circuit court had overlooked a principal's common-law duty to indemnify an agent for damages resulting from actions the agent takes at the principal's direction, if the agent acted in good faith. In the alternative, the Robersons argued that, even though a contract is not required to show a duty to indemnify, Drummond had in fact agreed to indemnify the Robersons by paying for David's legal fees and by paying his full salary and benefits. The Robersons attached to their motion a copy of the minutes of a special meeting of Drummond's

board of directors ("the board"). Those minutes reflect that the board agreed to the following:

> "1. David Roberson will continue on leave pending final outcome of the proceedings[;]
>
> "2. David Roberson will continue to receive pay and benefits; and,
>
> "3. [Drummond] will continue to indemnify David Roberson for legal fees for his defense."

Thereafter, the circuit court entered an order denying an oral motion to reconsider that the Robersons' had made at a status conference, but it did not address the Robersons' written motion to reconsider. Accordingly, the Robersons moved to reconsider the circuit court's order denying their oral motion to reconsider. The Robersons reasserted the arguments made in their original written motion to reconsider. The Robersons also attached the minutes of the board's special meeting to that motion.

The circuit court then entered another order denying the Robersons' motions to reconsider. In that order, the circuit court ruled:

"[T]he proffered excerpt of the transcript of a July 23, 2018, Meeting of … Drummond's [board of directors] did not constitute a contract between … [David] and … Drummond, but instead is relevant to [the Robersons' promissory-fraud

6

claim] …. The Court FINDS that the facts set forth in [the Robersons' indemnification claim] were not sufficient to prove the existence of a contract between … [David] and … Drummond requiring him to perform certain acts … which he did not know to be unlawful, thus triggering indemnification for all damages incurred by … [David] in performing the alleged requested acts. The Court FINDS that the [Robersons] are not prejudiced by the Dismissal of [the Robersons' indemnification claim] in light of the factually more specific allegation in [the Robersons' promissory-fraud claim]. The Court FINDS that the facts set forth in [the Robersons' promissory-fraud claim] incorporate[] the facts supporting the [Robersons' claim for indemnification] along with indemnification for damages sustained by [the Robersons], if proven."

(Capitalization in original; emphasis omitted.) The circuit court certified that order as final under Rule 54(b), Ala. R. Civ. P. The Robersons appeal.[1]

## II. Jurisdiction

As a threshold matter, we must address whether the circuit court properly certified its order dismissing the Robersons' indemnity claim as

---

[1]On December 5, 2023, this Court ordered the parties to submit supplemental briefing to address the following issue: "Whether the damages the Robersons seek in their indemnification claim against Drummond that are unrelated to liabilities of the Robersons to third parties fall within the definition of the term 'indemnification' as that term is currently defined by Alabama law?" Accordingly, the Robersons' appeal was submitted both on the original briefs and the supplemental briefs filed in response to this Court's order.

final under Rule 54(b). In its order denying the Robersons' motions to reconsider, the circuit court found that the facts set forth in Count 12, the Robersons' promissory-fraud claim, incorporated the facts alleged in the Robersons' indemnification claim. As the Robersons note in their brief to this Court, if that finding was correct, then the circuit court's certification of finality would be questionable: if the facts underlying both claims are the same, then there would be a possibility that the two claims might involve the same issues.

Rule 54(b) provides, in relevant part:

"When more than one claim for relief is presented in an action, … the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

This Court has held that a trial court exceeds its discretion in finding that there is no just reason for delay if the issues in the adjudicated claim and those in the pending claim are "'"'so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.'"'" Lighting Fair, Inc. v. Rosenberg, 63 So. 3d 1256, 1263 (Ala. 2010) (citations omitted). This Court has adopted the

8

following five factors to consider when determining whether there is a just reason for delay in reviewing an order certified under Rule 54(b):

> "'"(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [trial] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."'"

Id. at 1264 (citations, emphasis, and footnotes omitted).

Here, the relationship between the indemnification claim and the promissory-fraud claim is remote. As the Robersons note, the indemnification claim and the promissory-fraud claim are based on entirely different legal theories. The indemnification claim is based on an employer's alleged common-law and contractual duties to indemnify; the promissory-fraud claim is based on an allegedly fraudulent promise to pay David's salary and benefits.

Further, the issues in the two claims are not intertwined because each claim is based on different facts. The indemnification claim is based on David's employment relationship with Drummond <u>before his</u>

9

<u>conviction</u> and the directions he allegedly received from its general counsel; the promissory-fraud claim is based on Drummond's alleged representation to David <u>after he was convicted</u> that the Robersons "had nothing to worry about."

Finally, the damages sought in each claim are different. In the indemnification claim, the Robersons sought damages resulting from his prosecution and indictment; in the promissory-fraud claim, the Robersons sought damages for emotional distress and damages resulting from lost employment opportunities that Anna had declined based on the alleged representation, the "fire sale" of their house and its contents, and the lost benefits and salary that Drummond allegedly promised to pay David.

For these reasons, it does not appear that the indemnification claim and the promissory-fraud claim are significantly related. And because the indemnification claim and the promissory-fraud claim are not significantly related, the other factors are less relevant. Because the two claims involve different legal theories, issues, and damages, the possibility that later action in the circuit court could moot the issues in the adjudicated indemnification claim is minimal. For the same reason,

there is little risk that this Court will be required to address the issues presented here again in reviewing the circuit court's ruling on the promissory-fraud claim. Further, there are no other claims or counterclaims that could result in a setoff in the damages awarded. Accordingly, it does not appear that the issues in the indemnification claim and the promissory-fraud claim are so closely intertwined that separate adjudication will pose an unreasonable risk of inconsistent results.

Finally, there are several miscellaneous factors that weigh in favor of immediate consideration of the order dismissing the indemnification claim. For instance, were we to wait until after trial of the promissory-fraud claim to determine whether the circuit court properly dismissed the indemnification claim, only to conclude at that point that the circuit court had erred in dismissing the indemnification claim, the circuit court would have to hold another trial on that claim. Thus, factors such as delay, expense, shortening the time of trial, and judicial economy weigh in favor of immediate review of the order dismissing the indemnification claim. Accordingly, certification of the order dismissing the indemnification claim was proper here.

### III. Standard of Review

Rule 12(b)(6), Ala. R. Civ. P., provides for dismissal of claims for failure to state a claim upon which relief can be granted. "The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief." Nance ex rel. Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). "In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail." Id. Further, "a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Id.

### IV. Analysis

The Robersons contend that the circuit court erred in holding that they had failed to state a claim for indemnification because they did not allege that Drummond had a contractual duty to indemnify David. Specifically, the Robersons challenge the circuit court's following ruling:

"Indemnification generally comes into play in a contractual arrangement between the Parties. [The Robersons] assert[] in the [third amended] Complaint that … Drummond had and 'has a duty to indemnify [David] for all losses and damages that he has suffered and will suffer as a direct result of performing the duties assigned to him by Drummond via its General Counsel.' … The Court acknowledges that Compensatory Damages are awarded to a Plaintiff, who has proven his claim(s), to fairly and reasonably compensate him for the harm caused by another's wrongdoing. The Court is unaware of an automatic duty to Indemnify one for all losses or damages currently suffered and anticipated to [be] suffer[ed] in the future as a result of performing assigned 'duties,' without an agreement between the Parties establishing such a duty. [The Robersons] have neither produced nor alleged the existence of a contract or agreement between the [Robersons] and … Drummond to establish such a duty. … [The Robersons] do not allege any contract or agreement between [them] and … Drummond that places a 'duty' on … Drummond to compensate [the Robersons] for all losses or damages suffered now and anticipated to [be] suffer[ed] in the future. A duty to indemnify, such as alleged by the [Robersons], is not automatic. The Court FINDS that [the Robersons] cannot prove any relief consistent with the allegations set forth in the [third amended] Complaint to support the Count of Indemnification."

(Capitalization in original; emphasis omitted.) They also challenge the following ruling in the circuit court's order denying their motions to reconsider:

"[T]he facts set forth in [the Robersons' indemnification claim] were not sufficient to prove the existence of a contract between [David] and … Drummond requiring him to perform

13

> certain acts … which he did not know to be unlawful, thus triggering indemnification for all damages incurred by … [David] in performing the alleged requested acts."

In challenging those rulings, the Robersons argue that (1) Alabama common law imposes a duty on a principal to indemnify an agent; (2) they alleged that Drummond had a contractual duty to indemnify David both by undertaking to pay David his salary and benefits and by agreeing to reimburse his legal fees and by adopting a resolution to do so in its board minutes; and (3) they alleged facts supporting court-ordered indemnification under the Alabama Business and Nonprofit Entity Code ("the ABANEC"), § 10A-1-1.01 et seq., Ala. Code 1975.

Before we address those arguments, it is helpful to review what indemnification is. This Court has defined "indemnity" as "the obligation or duty resting on one person[] to make good any loss or damage another has incurred[] while acting at his request or for his benefit." <u>Vandiver & Co. v. Pollak</u>, 107 Ala. 547, 553, 19 So. 180, 182 (1895). See also 42 C.J.S. <u>Indemnity</u> § 1 (2017) ("Generally, 'indemnity' is defined as an obligation of one party to pay or satisfy the loss or damage incurred by another party."). Indemnity "permit[s] a defendant <u>forced to pay damages to a plaintiff</u> to recoup those damages from a third party on the basis of some

independent legal theory." 2 Michael L. Roberts, <u>Alabama Tort Law</u> § 36.05 (7th ed. 2021) (emphasis added). Generally, "[i]ndemnity springs from contract[,] express or implied." <u>Vandiver</u>, 107 Ala. at 553, 19 So. at 182.

> "Whether the indemnitor … [is] liable over to the indemnitee <u>for damages assessed against the indemnitee</u> may be ascertained by an action on the indemnitee contract, but this action <u>cannot be maintained until the existence of liability of the indemnitee is determined by some procedure known to law</u>, and the amount thereof becomes ascertainable."

Jenelle Mims Marsh, <u>Alabama Law of Damages</u> § 17:10 (6th ed. 2012) (emphasis added).

This Court has further noted that "'[t]he basis for indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay.'" <u>Amerada Hess Corp. v. Owens-Corning Fiberglass Corp.</u>, 627 So. 2d 367, 370 (Ala. 1993) (quoting <u>Restatement (Second) of Torts</u> § 886B, cmt. c. (Am. L. Inst. 1977)). "An indemnity provision generally <u>does not apply to claims between the parties</u> to the agreement, but obligates the indemnitor to protect the indemnitee

15

against claims brought by third parties." 42 C.J.S. Indemnity § 1 (footnotes omitted; emphasis added).

Accordingly, a duty to indemnify includes a duty to pay another party's out-of-pocket expenses, especially when those out-of-pocket expenses are imposed through a judicial determination of liability to a third party. This principle highlights a fundamental problem that permeates all of the Robersons' arguments. The losses they seek to recover were not indemnifiable because they were not judicially imposed liabilities to a third party or out-of-pocket expenses that David incurred in processing the invoices. David lost his salary and benefits, not because his wages had been garnished to satisfy an obligation to a third party, but because Drummond dismissed him. Similarly, David's mental anguish, worry, and distress were not expenses for which he was found liable because of his conduct. Whatever claims the Robersons may have against Drummond for failure to pay his salary and benefits and for the mental anguish, worry, and distress he suffered, those claims are not indemnification claims.

The only indemnifiable expense that David incurred was his legal fees that he incurred in the federal criminal proceedings. But it is

16

undisputed that Drummond fully indemnified David for those expenses. The Robersons even conceded in their third amended complaint that "[Drummond] has paid [David's] legal fees in the United States District Court and in the Eleventh Circuit Court of Appeals to date."

With this clarification in mind, we now proceed to consider the Robersons' particular arguments.

A. Common-Law Indemnification

In challenging the circuit court's rulings, the Robersons first contend that the circuit court disregarded the common-law duty to indemnify. The common-law duty to indemnify is well established in Alabama law. As early as 1855, this Court held:

> "Every man who employs another to do an act which the employer appears to have a right to authorize him to do, undertakes to indemnify him for all such acts as the agent does not know to be unlawful, and as would <u>be lawful</u> if the employer had the authority he pretends to have."

<u>Moore v. Appleton</u>, 26 Ala. 633, 637 (Ala. 1855) (emphasis added). "In all such cases, a promise of indemnity is implied, upon the plain dictates of reason and natural justice." <u>Id.</u> at 638. In <u>Moore</u>, 26 Ala. at 637, this Court cited § 339 of Joseph Story's treatise on agency, which contains the following discussion of the common-law duty to indemnify:

> "[I]t may be stated, as a general principle of law, that an agent, who commits a trespass, or other wrong to the property of a third person, by the direction of his principal, if at the time he has no knowledge or suspicion, that it is such a trespass or wrong, but acts <u>bona fide</u>, will be entitled to a reimbursement and contribution from his principal for all the damages which he sustains thereby. For, although the general doctrine of the common law is, that there can be no reimbursement or contribution among wrongdoers, whether they are principals, or are agents; yet that doctrine is to be received with the qualification, that the parties know, at the time, that it is a wrong. And in all these cases, there is no difference whether there be a promise of indemnity, or not; for the law will not enforce a contract of indemnity against a known and meditated wrong; and, on the other hand, where the agent acts innocently, and without notice of the wrong, the law will imply a promise on the part of the principal to indemnify him."

Joseph Story, <u>Commentaries on the Law of Agency</u> § 339 (6th ed. 1863) (footnotes omitted). See also <u>Vandiver</u>, 107 Ala. at 554, 19 So. at 182 (quoting the same passage from Story's <u>Commentaries</u>).

More recently, this Court has held that,

> "'[a]s a general rule, where an agent is employed or directed by another to do an act in his behalf, the law implies a promise of indemnity by the principal for damages resulting to the agent proximately from the execution of the agency, and of reimbursement for necessary expenses advanced or incurred by the agent in order to consummate that which he is directed to do. Under this rule the principal should reimburse the agent for, or exonerate him from, authorized payments on behalf of the principal ....'"

<u>Lauderdale v. Peace Baptist Church of Birmingham</u>, 246 Ala. 178, 182, 19 So. 2d 538, 542 (1944) (citations omitted).

The Robersons are correct that the circuit court overlooked the common-law duty to indemnify in its order. Nevertheless, there are multiple problems with the Robersons' common-law-indemnification argument. First, as explained above, even if Drummond had a common-law duty to indemnify David, that duty did not include a duty to continue paying David his salary and benefits or to protect him from mental anguish, worry, or distress, because those losses were not "damages" that David sustained as a result of his conduct.

Further, in each of the cases the Robersons cite in which this Court held that there was a common-law duty to indemnify, the agent was only <u>civilly</u> liable for actions done at the principal's direction. See <u>Moore</u>, 26 Ala. at 639 (holding that agent was entitled to indemnification for damages he incurred by wrongfully dispossessing occupant of land on behalf of principal); <u>Vandiver</u>, 107 Ala. at 560, 19 So. at 185 (holding that creditor was entitled to contribution from other creditors for damages resulting from wrongful sale of attached property); <u>Lauderdale</u>, 246 Ala. at 183, 19 So. 2d at 542 (holding that pastor's estate was entitled to

19

indemnification for debt pastor personally incurred in purchasing a building for a church); <u>Parker v. Mauldin</u>, 353 So. 2d 1375 (Ala. 1977) (holding that agent was entitled to indemnification for damages resulting from wrongful repossession of cotton picker); <u>Creel v. Crim</u>, 812 So. 1259 (Ala. Civ. App. 2001) (holding that lumberman was entitled to indemnification for damages arising from wrongfully cutting trees on property at neighbor's direction). The Robersons point to no authority finding a common-law duty to indemnify an agent from a criminal indictment, prosecution, conviction, or criminal penalty. Accordingly, to the extent that the Robersons seek indemnification for the criminal penalties David incurred, they fail to demonstrate that the common-law duty to indemnify includes the type of indemnification that they seek.

For these reasons, the Robersons fail to demonstrate that they sufficiently pleaded a claim for common-law indemnification.

B. Contractual Indemnification

Next, the Robersons contend that their indemnification claim stated a claim arising from the breach of a contract to indemnify. Specifically, they take issue with the circuit court's statements in its initial order dismissing the indemnification claim that the Robersons

"have neither produced nor alleged the existence of a contract or agreement between the [Robersons] and … Drummond to establish [a duty to indemnify]" and that they did "not allege any contract or agreement between [them] and … Drummond that places a 'duty' on … Drummond to compensate [the Robersons] for all losses or damages suffered now and anticipated to [be] suffer[ed] in the future." (Emphasis in original.)

The Robersons contend that they sufficiently alleged the existence of a contract calling for indemnification in two ways. First, they contend that Drummond entered into an implied contract to indemnify David by continuing to pay his salary and benefits and by paying his legal fees. In the alternative, they contend that Drummond entered into a contract to indemnify David when its board adopted a resolution to continue paying David his salary and benefits and to indemnify him for legal fees.

1. Implied Contract to Indemnify

The Robersons admit that, in their indemnification claim, they did not specifically allege that Drummond's duty to indemnify David arose from a contract or an agreement. Nevertheless, they contend that they pleaded the existence of a contract according to its legal effect. In support,

21

they cite a case in which this Court stated that a "'plaintiff, at his election, may set [a contract] forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its effect.'" Berry v. Druid City Hosp. Bd., 333 So. 2d 796, 801 (Ala. 1976) (citation omitted). The Robersons note that they pleaded that Drummond "undertook to perform its duty of indemnity" by paying David's legal fees and salary.

As explained above, the basic flaw in the Robersons' argument is that the duties they allege Drummond undertook, other than payment of David's legal fees, were not "indemnification." The Robersons fail to recognize that, to state a claim for recovery of David's lost salary and benefits, they should have pleaded a simple breach-of-contract claim. The obligation that they allege Drummond undertook was not a promise to indemnify David; it was simply a promise not to fire him. But the Robersons did not assert a breach-of-contract claim. "It is not the duty of the courts to create a claim which the plaintiff has not spelled out in the pleadings." McCullough v. Alabama By-Prods. Corp., 343 So. 2d 508, 510 (Ala. 1977) (citing Case v. State Farm Mut. Auto. Ins. Co., 294 F.2d 676 (5th Cir. 1961)).

2. Board Minutes

22

Before we consider if the board minutes that the Robersons attached to their motions to reconsider were a contract for indemnification, we must first determine whether the minutes were properly before the circuit court. In their brief to this Court, the Robersons recognize that a trial court is not ordinarily required to consider documents submitted with a motion to reconsider. Nevertheless, they contend that we can consider the board minutes on appeal because the circuit court actually considered the minutes in denying their motions to reconsider, without any objection from Drummond. The Robersons note that we have previously reviewed an issue that was raised for the first time in a motion to reconsider because the trial court had amended its order to address the issue. Maxwell v. Dawkins, 974 So. 2d 282, 286 (Ala. 2006). The Robersons' argument turns on the following portion of the circuit court's order denying their motions to reconsider:

> "In Denying the [Robersons'] Leave to file a Fourth Amended Complaint[2] while addressing [the Robersons'] proposed claim for Indemnification by Drummond based on an alleged Breach of Contract, the Court acknowledges that … the Court Determined that the proffered excerpt of the transcript of a July 23, 2018, Meeting of [Drummond's]

---

[2]The Robersons do not challenge the denial of their motion for leave to file a fourth amended complaint.

Executive Committee did not constitute a contract between [David] and [Drummond], but instead is relevant to [the Robersons'] [promissory-fraud claim]."

(Capitalization in original; emphasis omitted.)

Although a copy of the Robersons' motion for leave to file a fourth amended complaint is not in the record, it appears that the Robersons attached the board minutes to that motion in support of its proposed additional claim for indemnification based on a breach of a contract to indemnify. In denying that motion, the circuit court ruled on the Robersons' argument that the board minutes constituted a contract for indemnification, and the circuit court incorporated that previous ruling in denying the Robersons' motions to reconsider. Thus, the Robersons are correct that the circuit court considered the board minutes in ruling on the motions to reconsider. Accordingly, they are properly before us.

According to the minutes, Drummond's board agreed to the following:

"1. David Roberson will continue on leave pending final outcome of the proceedings[;]

"2. David Roberson will continue to receive pay and benefits; and,

24

"3. [Drummond] will continue to indemnify David Roberson for legal fees for his defense."

The Robersons are correct that the board did agree to "indemnify" David, but, as Drummond points out, the board used the word "indemnify" only with regard to David's legal fees for his defense, and, as discussed above, there is no dispute that Drummond fully indemnified David for his legal fees.

Nevertheless, the Robersons argue that Drummond's resolution to pay David's salary and benefits is parallel to its resolution to indemnify David for his legal fees. Thus, they contend that both Drummond's obligation to pay David's salary and benefits and its obligation to indemnify David for his legal fees continued to the end of his appeal. But even if the Robersons are correct that Drummond's obligations under the minutes continued for the same amount of time, that fact is insufficient to establish that both obligations involved "indemnification."

As explained above, David's loss of his salary and benefits was not a liability or expense that he incurred to a third party because he processed the invoices. Thus, regardless of whether the Robersons cast Drummond's decision to fire David as a breach of a corporate bylaw, a

25

breach of a corporate resolution, or a breach of an implied contract, they cannot make it the basis of an indemnification claim.

The Robersons also contend that the board minutes indicate that Drummond's bylaws required Drummond to indemnify David by paying his salary and benefits pending resolution of his appeal. They point to the minutes' statement that "[t]he Board discussed Company Bylaws including certain determinations involving indemnification." Relying on that statement, the Robersons contend that "the resolution shows that Drummond has bylaws concerning indemnification and that it acted pursuant to those bylaws when it placed [David] on paid leave." The Robersons' argument is based on speculation regarding what Drummond's bylaws actually required. They did not attach a copy of the bylaws to their written motion to reconsider or otherwise include it in the record, and they completely failed to allege in their third amended complaint that the bylaws required Drummond to continue paying David's salary and benefits. All they included in the record was the minutes, which indicate only that the board discussed the bylaws' indemnification provisions. That statement does not support the inference that everything the board resolved to do was based on the

bylaws' requirements. The fact that the board decided to continue paying David's salary and benefits after discussing Drummond's bylaws regarding indemnification does not mean that Drummond's bylaws required Drummond to "indemnify" David by paying his salary.

C. Court-Ordered Indemnification

Finally, the Robersons contend that their indemnification claim states a claim for court-ordered indemnification under the ABANEC. But, as Drummond points out in its brief to this Court, the Robersons did not assert its argument under the ABANEC in its response to Drummond's motion to dismiss, in the hearing on Drummond's motion to dismiss, in their written motion to reconsider the circuit court's order dismissing the indemnification claim, or in their motion to reconsider the circuit court's order denying the Robersons' oral motion to reconsider the dismissal of the indemnification claim. Rather, they assert it for the first time on appeal. It is well settled that this Court will not reverse a trial court's judgment on an issue not presented to the trial court. Ex parte Knox, 201 So. 3d 1213, 1216 (Ala. 2015). Accordingly, the Robersons failed to preserve their ABANEC argument for appellate review.

27

In their reply brief, the Robersons contend that they preserved their claim for court-ordered indemnification simply by alleging facts that they say were sufficient to invoke the theory. They rely on this Court's statement that, "'"if under a provable set of facts, upon any cognizable theory of law, a complaint states a claim upon which relief could be granted, the complaint should not be dismissed."'" Roberson v. Balch & Bingham, LLP, 358 So. 3d 1118, 1126 (Ala. 2022) (citations omitted). But the Robersons conflate the requirements for sufficiently pleading a claim with the requirements for preserving for appeal a basis for reversing an order dismissing a claim. To preserve a basis for reversing an order dismissing a claim, a plaintiff must bring that basis to the trial court's attention either in response to the motion to dismiss or in a postjudgment motion. Allowing a plaintiff to assert a basis for reversal for the first time on appeal so long as it satisfied the requirements for sufficient pleading would violate basic principles of appellate procedure. Knox, supra.

## V. Conclusion

For these reasons, we affirm the order dismissing the Robersons' indemnification claim.

AFFIRMED.

28

Mendheim and Stewart, JJ., and Baschab* and Welch,* Special Justices, concur.

Lyons,* Special Justice, concurs in part and dissents in part as to the rationale and dissents from the judgment, with opinion, joined by Main,* Special Justice.

Shaw, Wise, Bryan, Sellers, Mitchell, and Cook, JJ., recuse themselves.

---

*Retired Associate Justice Champ Lyons, Jr., Retired Associate Justice James Allen Main, Retired Judge Pamela Willis Baschab, and Retired Judge Samuel Henry Welch were appointed to serve as Special Justices in regard to this appeal.

LYONS, Special Justice (concurring in part and dissenting in part as to the rationale and dissenting from the judgment).

This case presents a remarkable assortment of shifting theories and rationales. The trial court dismissed the indemnification claim asserted by David Roberson and Anna Roberson on a ground not asserted in the motion to dismiss filed by Drummond Company, Inc. ("Drummond"). The Robersons, on appeal, assert statutory relief not raised below. Drummond, on appeal, raises grounds not argued in the trial court but fails to defend the ground actually relied upon by the trial court. The main opinion affirms on a theory never raised below or on appeal by Drummond.

Drummond asserts for the first time on appeal that the effect of David Roberson's conviction in federal court precludes him from pursuing a civil action in state court seeking a result inconsistent with the facts found in the federal criminal proceeding. In their reply brief, the Robersons argue persuasively that Drummond is asserting for the first time on appeal an issue that constitutes a waived affirmative defense. In fact, the Robersons contend that in the trial court Drummond relied on authority that is inconsistent with its position on

appeal. The Robersons cite authority that prevents affirmance on a waived affirmative defense. However, in this proceeding, the obligations inherent in serving an answer, such as, among other things, assertion of any available affirmative defenses, did not come into play because the trial court dismissed the indemnification claim asserted in the Robersons' third amended complaint, thereby eliminating the necessity for Drummond to raise affirmative defenses to that claim in an answer. For this reason, it would be inappropriate to affirm the trial court's dismissal order on this ground.

The main opinion addresses the ground for dismissal relied upon by the trial court and agrees with the Robersons that the trial court erred in overlooking common-law indemnity. I concur in that determination. The main opinion then limits common-law indemnity to claims by the indemnitee against the indemnitor for losses sustained as a result of claims against the indemnitee by third parties, thus serving up an additional basis for affirmance by stating that the Robersons point to no authority finding a common-law duty to indemnify an agent from a criminal indictment, conviction, or criminal penalty. On this theory, a defense of estoppel, had it been asserted, would have been a defense to

31

the indemnification claim asserted in the third amended complaint. Of course, neither of these contentions were asserted by Drummond in the trial court or on appeal. With respect to contractual indemnity, the main opinion again points to the unavailability of indemnity when the losses are not triggered by liability to a third party.

The Court requested supplemental briefing on a potential basis for affirmance, namely, that common-law indemnity is limited to claims by the indemnitee against the indemnitor for losses sustained as a result of claims against the indemnitee by third parties. The additional briefing was ordered due to the potential for the denial of due process recognized in Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So. 2d 1013, 1020 (Ala. 2003), wherein this Court affirmed the trial court's judgment on a ground raised by the Court for the first time on appeal. The issue whether indemnity is restricted to restitution for losses that the alleged indemnitee, who was an employee of the alleged indemnitor, was required to pay to a third party was not raised by the Robersons, Drummond, or the trial court, either below or on appeal.

In their supplemental brief, the Robersons point to the procedural

defect of Drummond's failure to attack the nature of recoverable damages by proper motion below and also assert substantive grounds for rejecting a restricted view of recoverable damages for indemnity based on caselaw and an Alabama statute. Sorting through the details of the procedural requirements of a challenge to damages by a defendant and the substantive issue of the recoverability of specific categories of damages under the facts before us, as well as applying the precedents applicable to these issues cited in the supplemental briefs, smack of functions that should initially be left to the trial court, with one exception -- the determination whether, in considering those issues, the Robersons should be permitted to rely on certain provisions of the Alabama Business and Nonprofit Entities Code ("the ABANEC"), Ala. Code 1975, §10A-1-1.01 et seq.

With respect to the appropriate procedural posture for a challenge to damages, the Robersons cite <u>Jefferies v. Bush</u>, 608 So. 2d 361 (1992). In that case, a defendant challenged the recoverability of a certain category of damages at the trial level by moving to strike a request for mental-anguish damages asserted in the complaint. After noting that such a procedure was no longer appropriate after the promulgation of

the Alabama Rules of Civil Procedure, this Court observed that "the proper vehicle for challenging a claim for mental anguish damages would be a motion for partial summary judgment." Id. at 363. This Court then reviewed the trial court's determination preventing the plaintiffs from recovering mental-anguish damages by applying the standard applicable to a partial summary judgment. Of course, here, no motion of any kind challenging the categories of damages sought was served by Drummond below, so this Court cannot review any ruling on such a motion simply by applying the proper standard, as was done in Jefferies.

I am unable to conclude that the round of letter briefs on the issue of the categories of recoverable damages for indemnity is an adequate substitute for proceedings below on a motion for a partial summary judgment. I therefore dissent from the main opinion's affirmance of the trial court's order insofar as the affirmance is premised on the unavailability of the damages sought by the Robersons under a claim for common-law indemnity.

Turning to the ABANEC claim, the Robersons assert it for the first time on appeal, citing the opinion this Court released in an earlier appeal in this case, Roberson v. Balch & Bingham, LLP, 358 So. 3d

34

1118 (Ala. 2022), as authority to do so, notwithstanding their failure to assert it in their third amended complaint. The Robersons' reliance on this Court's opinion in the previous appeal in this case is misplaced. The operative complaint in <u>Roberson</u> explicitly charged common-law fraud. The issue of the sufficiency of the allegations of the fraud claim was thus addressed on appeal based on a record established in the trial court, not on an allegation made for the first time on appeal.

As for the ABANEC claim, as Drummond contends in its principal brief to this Court, the Robersons

> "did not present this argument to the trial court. '[An] appellate court] cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration or were raised for the first time on appeal.' ... Therefore, we do not address that argument further."

 G.A. West & Co. v. McGhee, 58 So. 3d 167, 177 (Ala. Civ. App. 2010) (quoting State Farm Mut. Auto. Ins. Co. v. Motley, 909 So. 2d 806, 821 (Ala. 2005)). See also Marks v. Tenbrunsel, 910 So. 2d 1255, 1263 (Ala. 2005) ("'This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.'" (citation omitted)).

35

The Robersons cannot circumvent this settled rule by arguing that the trial court should have <u>sua sponte</u> analyzed Count 1 of the third amended complaint as a statutory claim for court-ordered indemnity. See <u>McCullough v. Alabama By-Prods. Corp.</u>, 343 So. 2d 508, 510 (Ala. 1977) (citing <u>Case v. State Farm Mut. Auto. Ins. Co.</u>, 294 F.2d 676 (5th Cir. 1961)) ("It is not the duty of the courts to create a claim which the plaintiff has not spelled out in the pleadings."). And, the Robersons' ABANEC claim is not a new argument of existing issues related to common-law claims that were set forth in their third amended complaint. I therefore concur in this aspect of the main opinion.

In my opinion, however, the trial court's order should be reversed and the case remanded for full development below of the issue regarding the categories of recoverable damages under common-law indemnity and any other issues stemming from service by Drummond of an answer asserting applicable affirmative defenses.

Main, Special Justice, concurs.

36